RECORD NUMBER: 14-4171

# United States Court of Appeals
### *for the*
# Fourth Circuit

UNITED STATES OF AMERICA,

*Appellee,*

*– v. –*

WILLIAM CHRISTOPHER BUTLER,

*Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA AT WILMINGTON

# OPENING BRIEF OF APPELLANT

RICHARD CROUTHARMEL
ATTORNEY AT LAW
303-200 Blake Street
Suite 211
Raleigh, North Carolina 27601
(919) 755-1113

*Counsel for Appellant*

CP  COUNSEL PRESS ● VA – (800) 275-0668

# TABLE OF CONTENTS

Table of Authorities ....................................................................................... ii

Statement of Subject Matter and Appellate Jurisdiction ............................... 1

Statement of the Issue Presented.................................................................... 1

Statement of the Case..................................................................................... 1

    Procedural Facts....................................................................................... 1

    Substantive Facts .................................................................................... 2

        Rule 11 Hearing................................................................................ 2

        The PSR ............................................................................................ 4

        Sentencing Hearing ......................................................................... 6

Argument........................................................................................................ 8

I.     THE DISTRICT COURT PLAINLY AND REVERSIBLY
       ERRED AND ABUSED ITS DISCRETION BY FAILING TO
       ESTABLISH AN ADEQUATE FACTUAL BASIS TO
       SUPPORT BUTLER'S GUILTY PLEA TO TRANSPORTING
       VISUAL DEPICTIONS OF CHILD PORNOGRAPHY IN OR
       AFFECTING INTERSTATE COMMERCE IN APRIL 2012. ........... 8

    Summary of the Argument ...................................................................... 8

    Standard of Review.................................................................................. 8

    Discussion................................................................................................ 9

Conclusion ................................................................................................... 20

Certificate of Compliance

Certificate of Service

i

# TABLE OF AUTHORITIES

**Cases:**

*Atlantic Cleaners & Dyers v. United States*,
   286 U.S. 427, 52 S. Ct. 607, 76 L. Ed. 1204 (1932) .......................... 14

*Brown v. Nucor Corp.*,
   576 F.3d 149 (4th Cir. 2009) ............................................................... 9

*Connecticut Nat'l Bank v. Germain*,
   503 U.S. 249, 117 L. Ed. 2d 391, 112 S. Ct. 1146 (1992) ................. 14

*Muscarello v. United States,*
   524 U.S. 125, 118 S. Ct. 1911, 141 L. Ed. 2d 111 (1998) ................. 13

*Smith v. Husband*,
   376 F. Supp. 2d 603 (E.D. Va. 2005) .................................................. 17

*United States v. Carr*,
   271 F.3d 172 (4th Cir. 2001) ........................................... 11, 18, 19, 20

*United States v. DeFusco*,
   949 F.2d 114 (4th Cir. 1991) .............................................................. 12

*United States v. Heater*,
   63 F.3d 311 (4th Cir. 1995) ................................................................ 10

*United States v. Johnson*,
   617 F.3d 286 (4th Cir. 2010) ......................................................... 9, 18

*United States v. Martinez*,
   277 F.3d 517 (4th Cir. 2002) ...................................................... 8, 9, 18

*United States v. Mastrapa*,
   509 F.3d 652 (4th Cir. 2007) ......................................................... 9, 18

*United States v. Mitchell*,
   104 F.3d 649 (4th Cir. 1997) ................................................... 9, 12, 18

*United States v. Runyan*,
　　290 F.3d 223 (5th Cir. 2002) ............................................................... 14

*United States v. Vineyard*,
　　266 F.3d 320 (4th Cir. 2001) ....................................................... 8, 9, 18

**Rules and Statutes:**

18 U.S.C. § 2252(a)(1) ............................................................*passim*

18 U.S.C. § 2256 ......................................................................... 13

18 U.S.C. § 3231 ........................................................................... 1

18 U.S.C. § 3742(a) ...................................................................... 1

28 U.S.C. § 1291 .......................................................................... 1

Fed. R. Crim. P. 11 ....................................................................... 8

Fed. R. Crim. P. 52(b) ................................................................... 8

**Other Authorities:**

USSG Manual § 2G2.1 ............................................................... 10

*Black's Law Dictionary* 1499 (6th ed. 1990) ............................... 13

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The district court had jurisdiction under 18 U.S.C. § 3231 (2013).  This Court has jurisdiction under 28 U.S.C. § 1291 (2014) and 18 U.S.C. § 3742(a) (2014).  William Christopher Butler ("Butler") appeals from a final judgment:  his criminal conviction for transportation of child pornography under 18 U.S.C. § 2252(a)(1) (2013).  The United States District Court for the Eastern District of North Carolina ("the district court") sentenced Butler to 240 months in prison on 20 February 2014 and entered judgment on 28 February 2014 (JA pp 62, 69-70).  Butler filed written notice of appeal on 4 March 2014 (R pp 76-77).

## STATEMENT OF ISSUE PRESENTED

Did the district court plainly and reversibly err (and abuse its discretion) by failing to establish an adequate factual basis to support Butler's guilty plea to transporting visual depictions of child pornography in or affecting interstate commerce in April 2012?

## STATEMENT OF THE CASE

**Procedural Facts:**

On 16 July 2013 a grand jury indicted Butler on three counts:  production, transportation, and possession of child pornography (JA pp 8-10).  On 1 October 2013, in the district court, the Honorable Senior Judge James C. Fox arraigned Butler who, pursuant to a plea agreement, entered a guilty plea to transporting

1

child pornography (JA pp 11-43).   On 20 February 2014 Judge Fox sentenced
Butler to the Bureau of Prisons for 240 months (JA pp 62, 69-70).   Judge Fox
entered judgment on 28 February 2014 (JA p 5, DE 34).  Butler filed written notice
of appeal on 4 March 2014 (JA pp 76-77).

**Substantive Facts:**

### Rule 11 Hearing:

On 1 October 2013 Judge Fox started Butler's Rule 11 hearing by first
addressing a group of defendants simultaneously and informing them of their rights
to a jury trial and the consequences of pleading guilty (JA pp 13-26).  After Judge
Fox informed the defendants collectively of these rights, he addressed each
defendant individually (JA p 26).

When Judge Fox got to Butler, he first told him he was under oath and that
he must answer the ensuing questions truthfully and that his failure to do so could
result in prosecution for perjury (JA p 26).   Judge Fox asked Butler if he
understood this (JA p 26).  Butler did not reply (JA p 26).  Butler's attorney then
told Judge Fox that Butler was hearing impaired and that he had been brought to
court from the jail without his hearing aid (JA p 27).  Butler's attorney told Judge
Fox that she would "translate" for Butler (JA p 27).  Judge Fox agreed and then
asked Butler a few questions (presumably through his attorney) and then found
Butler competent to proceed (JA p 27).

2

Judge Fox then informed Butler of the three charges he faced and the potential sentence for each charge (JA pp 28-30). Judge Fox asked Butler if he was pleading guilty to Count 2 (transportation of child pornography) pursuant to a plea agreement (JA p 30). Butler answered in the affirmative (JA p 30). Judge Fox then asked Butler a series of questions concerning the plea agreement (JA p 30-34). After that, Judge Fox asked the prosecutor to read the terms of the plea agreement into the record (JA p 34). Before doing so, the prosecutor noted for the record that the clerk had provided Butler with an "audio assistance device" to help him understand what was being discussed (JA p 34). It is unclear when the clerk gave Butler the device however.

The prosecutor read the terms of the plea agreement into the record (JA pp 34-40). He did not give a factual basis in support of the plea during his recitation (JA pp 34-40). At the conclusion of the prosecutor's statements, Judge Fox asked Butler if the hearing aid was helping and Butler said, "It's going in and out." (JA p 40, line 19) Judge Fox then asked Butler if he had heard everything that had gone on that day (JA p 40). Butler replied in the affirmative (JA p 40). Judge Fox then asked Butler the following: "Did you knowingly transport in and affecting interstate commerce a visual depiction, the production of such depiction involved the use of a minor engaged in sexually explicit conduct and that such visual

3

depiction was of such conduct; did you do that?" (JA pp 41-42)  Butler said, "Yes,
I did, sir." (JA p 42)

Judge Fox then announced he was finding Butler's plea to be voluntary and
that Butler fully and completely understood the nature of the charges, the
consequences of the plea, and the maximum penalties involved (JA p 42).  Judge
Fox further found that Butler's plea was supported by an independent factual basis
(JA p 42).  Judge Fox accepted Butler's plea agreement but deferred acceptance of
the written plea agreement until he had reviewed a presentence report ("PSR") (JA
pp 42-43).

**The PSR:**

The probation officer filed the PSR on 13 February 2014 (JA p 78).  The
PSR used the 2013 United States Sentencing Guidelines ("USSG") manual (JA p
86, ¶ 38).  The "offense conduct" section read as follows:

> 5.  On March 19, 2013, an investigation related to the production of
> child pornography (CP) was initiated by the Greenville, North
> Carolina, Police Department (GPD). Inmotion, a media transfer and
> video production company in Greenville, notified the GPD that the
> business was in possession of an 8mm film which contained CP. A
> customer delivered the film to Inmotion to have the images transferred
> to a digital versatile disc (DVD). Inmotion discovered scenes on the
> film of an adult male digitally penetrating an 11 year old female
> (victim). Using the customer contact information provided to
> Inmotion, agents identified WILLIAM CHRISTOPHER BUTLER of
> Vanceboro, North Carolina, as the individual who requested the media
> transfer.

4

6.  On March 20, 2013, a search warrant was executed at BUTLER's residence. On March 21, 2013, following a polygraph examination, agents with the North Carolina State Bureau of Investigation (NCSBI) interviewed the defendant at which time he provided an unprotected statement. Specifically, BUTLER advised that he made the film in November 2002 when he lived in Bonita Springs, Florida.

7.  Forensic examination of the film revealed that the defendant sexually molested the victim while she was asleep. Specifically, he licked the victim's breast and inserted his finger into her vagina. Furthermore, investigation revealed that the offense occurred while the victim was visiting BUTLER's daughter.

8.  Based on the investigation, BUTLER produced CP in Florida by molesting an 11 year old minor who was in his care, custody, and supervisory control. The defendant captured the sexual acts by recording the abuse on an 8mm film. Furthermore, BUTLER transported CP from Florida to North Carolina where he distributed it by attempting to convert the film to a DVD. Specifically, the defendant transported the video to a commercial media transfer company and unknowingly allowed employees of that company to view the CP during the media transfer process.

(JA pp 80-81)

The probation officer determined Butler's criminal history category to be III (JA p 82, ¶ 17).  He determined the base offense level to be 32 (JA p 86, ¶ 39). The probation officer found the existence of four enhancements, all of which had been agreed to in the plea agreement (JA p 86).  Butler was given a 3-point reduction for acceptance of responsibility (JA p 87).  The probation officer determined Butler's total offense level to be 39 (JA p 87). Based on a criminal history category of III and a total offense level of 39, the probation officer calculated Butler's USSG prison range to be 324 to 405 months (27 to 33.75 years)

5

(JA p 87).  However, the statutory maximum sentence was 240 months (20 years) (JA p 87).  Butler did not object to the PSR (JA p 89).

**Sentencing Hearing:**

At sentencing Butler had a new attorney who announced that Butler had no objections to the PSR (JA p 54).  Butler apologized for his criminal conduct (JA p 54).  He told Judge Fox he suffered from heart disease and diabetes (JA p 55).  He had undergone a triple bypass in 2003 (JA p 55).  A doctor had recently told him his arteries were beyond repair (JA p 55).  He said he was facing imminent amputation of his limbs (JA p 55).  His wife suffered from multiple sclerosis and was wheelchair-bound (JA p 55).  Butler said that the child pornography video had been produced 11 years earlier and it was his only involvement with child pornography (JA p 55).  Butler said he was 55 years old and he feared dying in prison (JA p 56).  He asked for leniency (JA p 56).

Butler's attorney pointed out that Butler had minimal criminal history and a positive employment history (JA p 56).  Law enforcement officers had found no other child pornography in Butler's residence (JA p 57).  The attorney asserted that Butler's actions were an isolated incident (JA p 58).  He argued that Butler's health problems and his advanced age made it unlikely he would re-offend (JA pp 56-57).  The attorney asked Judge Fox to vary downward from 240 months to 120 months (JA p 57).

The prosecutor pointed out that Butler was already getting a break due to the statutory max of 20 years (JA p 58). He disagreed that Butler's criminal history was minimal (JA p 58). He pointed out that Butler had been convicted of marijuana possession, witness tampering, and domestic violence (JA p 58). The prosecutor noted that the victim of the child pornography was a friend of Butler's daughter spending the night in Butler's home (JA p 58). The prosecutor further asserted that Butler had offered the children alcohol and marijuana (JA p 59). The prosecutor noted that Butler had held onto the video for a number of years and got caught only because he attempted to convert it to a DVD (JA p 59). The prosecutor asked Judge Fox to impose a 240-month sentence (JA p 58-59).

Butler personally responded by saying that he attempted to convert the video to transfer images of his deceased mother's funeral onto a DVD (JA p 61). It was his intent to erase the video of the child pornography (JA p 61). The prosecutor countered by saying that law enforcement officers found no evidence of Butler's deceased mother's funeral on the video (JA p 61). Butler then said he must have accidently recorded over it (JA p 61).

Judge Fox sentenced Butler to 240 months (JA pp 62, 69-70). Butler appealed (JA pp 76-77).

# ARGUMENT

## I. THE DISTRICT COURT PLAINLY AND REVERSIBLY ERRED AND ABUSED ITS DISCRETION BY FAILING TO ESTABLISH AN ADEQUATE FACTUAL BASIS TO SUPPORT BUTLER'S GUILTY PLEA TO TRANSPORTING VISUAL DEPICTIONS OF CHILD PORNOGRAPHY IN OR AFFECTING INTERSTATE COMMERCE IN APRIL 2012.

**Summary of Argument:**

There are only two sources of record evidence concerning whether Butler transported visual depictions of child pornography in or affecting interstate commerce in April 2012: (1) Judge Fox's colloquy with Butler at the Rule 11 hearing, and (2) the PSR. Neither source provides sufficient evidence to establish a factual basis to support Butler's guilty plea to transporting visual depictions of child pornography in or affecting interstate commerce in April 2012. As such, this case must be vacated and remanded to the district court for further Rule 11 proceedings.

**Standard of Review:**

Since Butler failed to move to withdraw his guilty plea in the district court, this Court reviews for plain error. *United States v. Martinez*, 277 F.3d 517, 525-26 (4th Cir. 2002) (adopting plain error analysis for violations of Fed. R. Crim. P. 11). A plain error is a defect not brought to the trial court's attention that affects a substantial right. Fed. R. Crim. P. 52(b) (2013); *United States v. Vineyard*, 266 F.3d 320, 324-25 (4th Cir. 2001) (internal citation omitted). An appellate court

8

will not correct a plain error unless it "seriously affects the fairness, integrity, and public reputation of judicial proceedings." *Id.*

But *cf.*, *United States v. Mitchell*, 104 F.3d 649, 652 (4th Cir. 1997) (the Court may reverse the district court's determination that there is a sufficient factual basis for a guilty plea only if it finds an abuse of discretion); *accord*, *United States v. Mastrapa*, 509 F.3d 652, 660 (4th Cir. 2007) (citing *Martinez*, 277 F.3d at 531). A district court abuses its discretion when its decision is "guided by erroneous legal principles or rest[ed] upon a clearly erroneous factual finding." *United States v. Johnson*, 617 F.3d 286, 292 (4th Cir. 2010) (quoting *Brown v. Nucor Corp.*, 576 F.3d 149, 161 (4th Cir. 2009)) (internal quotation marks omitted).

**Discussion:**

The record evidence fails to show that a written factual basis was filed in this case (JA pp 2-7). Additionally, Judge Fox did not receive an oral factual basis at the Rule 11 hearing (JA pp 11-43). The closest Judge Fox came to receiving any type of factual basis at the Rule 11 hearing was his colloquy with Butler (JA pp 41-42). Judge Fox asked Butler the following: "Did you knowingly transport in and affecting interstate commerce a visual depiction, the production of such depiction involved the use of a minor engaged in sexually explicit conduct and that such visual depiction was of such conduct; did you do that?" (JA pp 41-42) Butler answered in the affirmative (JA p 42).

9

Unfortunately, this Court cannot adequately discern what Butler's affirmative response meant. It could have meant "Yes, I transported child pornography," or "Yes, the transportation was in or affecting interstate commerce," or "Yes, I did it knowingly," or some combination of these possible constructions. If Butler affirmatively answered the question "Did you do that?", his response more than likely pertained to his actions and not to his knowledge that his actions were in or affecting interstate commerce.

Additionally, Judge Fox failed to ask Butler if he had committed the act in April 2012 (JA pp 41-42). Thus, even if this Court were to construe Butler's answer to Judge Fox's question to be an affirmation of all of the elements of the question, Judge Fox's question did not reference a time frame. It may be that Butler agreed that he did all of those things but he did them before April 2003, when the sentencing penalties for the crime were different. *Compare* 18 U.S.C. § 2252(a)(1) (2002) (statutory imprisonment range is not more than 15 years) *with* 18 U.S.C. § 2252(a)(1) (2012) (statutory imprisonment range is 5 to 20 years); *compare also* USSG Manual § 2G2.1 (2003) (base offense level for child pornography crime is 27) *with* USSG Manual § 2G2.1 (2013) (base offense level for child pornography crime is 32); *see also United States v. Heater*, 63 F.3d 311, 331 (4th Cir. 1995) ("amendments to the Guidelines occurring after a defendant's offense but before sentencing should not be applied if doing so would increase the

10

sentence, because that would violate the Ex Post Facto Clause in Article I, § 9 of the United States Constitution").

This case is on point with *United States v. Carr*, 271 F.3d 172 (4th Cir. 2001). In *Carr*, the defendant pled guilty to setting fire to real property used in interstate commerce. *Id.* at 176. Like Butler, Carr asked the district court for leniency due to health concerns. *Id.* The district court denied the request and sentenced Carr to 125 months in prison. *Id.* Carr appealed. On appeal, Carr argued that his guilty plea lacked a sufficient factual basis in violation of Rule 11. *Id.* at 178-79. This Court agreed and noted that the only evidence of a factual basis was the district court judge's colloquy with Carr and that colloquy failed to demonstrate that the real property Carr burned had an interstate connection. *Id.* at 179. The *Carr* Court wrote as follows:

> In this case, however, we perceive an insufficient factual basis in this record to support Carr's guilty plea to Count One. At the Rule 11 hearing, conducted pre-*Jones* on January 10, 2000, the court asked, "Did you as charged in Count 1 set fire to a building in order to damage it and the building was property used by another in or effecting [sic] interstate commerce and you did this intentionally? Did you do that?" J.A. 96-97. While Carr answered "yes, sir," J.A. 97, we are unable to adequately discern what this answer meant. It could mean "Yes, I set fire to a building," or "Yes, the property was used by another in or affecting interstate commerce," or "Yes, I did it intentionally," or some combination of these possible constructions. If Carr answered the last question posed, "Did you do that?", his affirmative response pertains to Carr's own actions and not to Carr's knowledge of any use of the property in interstate commerce.

*Id.* at 179.

11

It is true that a district court is not limited to the Rule 11 plea colloquy in establishing a factual basis for a guilty plea. *United States v. DeFusco*, 949 F.2d 114, 120 (4th Cir. 1991). The district court "may conclude that a factual basis exists from anything that appears on the record." *Id.* No reversal is warranted where the district court could reasonably have determined that a sufficient factual basis existed based on the record before it. *Mitchell*, 104 F.3d at 652.

However, here there is no record evidence establishing a factual basis that Butler committed a transportation of child pornography in or affecting interstate commerce in April 2012. Indeed, there is no record evidence that Butler committed a transportation of child pornography in or affecting interstate commerce period, let alone a transportation of child pornography in or affecting interstate commerce in April 2012.

What amounts to a "transport" of child pornography is not clear on the face of the statute. The statute Butler pled guilty to reads as follows:

§ 2252. Certain activities relating to material involving the sexual exploitation of minors

(a) Any person who—

 (1) knowingly transports or ships using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means including by computer or mails, any visual depiction, if—

  (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

12

> (B) such visual depiction is of such conduct;

shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2252(a)(1) (2013) (emphasis added).  The statute does not define the terms "transport" or "ship."  *See* 18 U.S.C. § 2256 (2012).  When there is no indication that Congress intended a specific legal meaning for a word, a court may look to sources such as dictionaries for a definition.  *See Muscarello v. United States,* 524 U.S. 125, 127-31, 118 S. Ct. 1911, 1914-16, 141 L. Ed. 2d 111 (1998) (relying upon dictionaries, literature, and newspaper reports, in addition to legislative history, to ascertain the meaning of the word "carry").

Black's Law Dictionary defines the verb "transport" as follows:  "To carry or convey from one place to another."  *Black's Law Dictionary* 1499 (6th ed. 1990).  Black's defines the verb "ship" as follows:

> In a broader sense, to transport; to deliver to a carrier (public or private) for transportation.  <u>To send away, to get rid of.</u>  To send by established mode of transportation, as to "carry," "convey," or "transport," which are synonymous and defined, respectively, as "to bear or cause to be borne as from one place to another," and "to carry or convey from one place to another."

*Id*. at 1377 (emphasis added).  Butler submits that inherent in the definition of these two verbs is the notion that whatever is being moved should remain at its intended destination once there ("to send away").

13

Another rule of statutory interpretation is that any particular statutory language must be construed in relation to other parts of the statute. *Atlantic Cleaners & Dyers v. United States*, 286 U.S. 427, 433, 52 S. Ct. 607, 76 L. Ed. 1204 (1932) (statutes should be read in *pari materia* because "identical words used in different parts of the same act are intended to have the same meaning"); *see also Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253, 117 L. Ed. 2d 391, 112 S. Ct. 1146 (1992) (federal courts hesitate to interpret statutes in a manner which renders part of a statute surplusage).

Congress also used the terms "mail" and "computer" in 18 U.S.C. § 2252(a)(1). Butler submits that Congress's use of these two words is further evidence of its intent that the child pornography being transported should stay at its intended destination once there (one typically does not mail or email something to oneself). These words are also evidence of Congress's intent that other people view the child pornography once it reaches its intended destination. Conveying child pornography by mail or computer also helps establish the interstate commerce connection. *See United States v. Runyan*, 290 F.3d 223, 242 (5th Cir. 2002) (showing a connection between the child pornography image and a computer internet connection establishes the requisite jurisdictional link to interstate commerce). Given Congress's use of the terms "transport," "ship," "mail," and "computer" in 18 U.S.C. § 2252(a)(1), Congress intended for a "transportation" of

14

child pornography to include a movement coupled with an intent that the child pornography remain at its destination so it can be viewed by others.

Here, the PSR indicates that Butler produced a child pornography video in November 2002 (JA p 80, ¶ 6). Then, on some unknown date, Butler moved from Florida to North Carolina, presumably with the child pornography video in his possession (JA pp 81, ¶ 8). Then, again on some unknown date but presumably sometime shortly before March 2013 when law enforcement got involved, Butler took the video to a North Carolina commercial media transfer company to convert it to a DVD (JA pp 80-81). It is unclear from the record how Butler took the video from his North Carolina home to the North Carolina commercial media transfer company (JA pp 80-81).

The PSR seems to suggest that Butler's crime occurred when he took the video to the commercial media transfer company (JA p 81, ¶ 8). There are a couple of problems with using this movement of the video as the basis for the crime however. First, there is no evidence of Butler's intent to leave the video at the commercial media transfer company so that it may be viewed by others. As argued above, a transportation under 18 U.S.C. § 2252(a)(1) requires an intent by the accused to leave the child pornography at its intended destination so it can be viewed by others. Here, Butler's intent was to have the child pornography images transferred from 8 mm video to DVD (JA pp 80-81). There is nothing in the

15

record to suggest that such a transfer could occur only by having others (*i.e.*, employees of the commercial media transfer company) view the images on the video. It is intuitively obvious that images can be transferred from one medium to another without the transferor actually viewing the images. For example, one can transfer images from a digital camera onto a computer without looking at the images.

Second, there is nothing in the record to indicate an interstate commerce connection in the carrying of the video from Butler's home to the commercial media transfer company. The PSR fails to show how Butler carried the video to the commercial media transfer company (JA pp 80-81). Butler may have walked from his home to the commercial media transfer company carrying the video by hand. Both the commercial media transfer company and Butler's home were in North Carolina (JA pp 80-81). Thus, Butler's carrying of the video from his home to the commercial media transfer company was not across state lines. There is no record evidence that the devices that would be used to convert the 8 mm video to DVD were shipped or otherwise used in interstate commerce. If the government relied on Butler's carrying of the video from his home to the commercial media transfer company to prove the transportation crime, it is unclear as to what was the interstate commerce connection.

16

If, on the other hand, the government relied on Butler's carrying of the video from Florida to North Carolina as being the act that gave the transportation its interstate commerce connection, there is no evidence of when Butler moved from Florida to North Carolina.  Presumably this move occurred between November 2002 (when Butler created the video in Florida) and March 2013 (when law enforcement got involved in North Carolina).  The indictment indicates that the transportation occurred in April 2012, which is between those two dates (JA p 8).  However, there is no information in the record -- independent of the indictment -- indicating that Butler moved from Florida to North Carolina in April 2012.  Even if there was, Butler does not concede that such a move shows a transportation of child pornography in or affecting interstate commerce.  *See Smith v. Husband*, 376 F. Supp. 2d 603, 615 n.5 (E.D. Va. 2005) ("It is uncertain whether the mere transportation of a home video [depicting child pornography] across state lines can meet the definition of interstate commerce under [18 U.S.C. § 2252].")  Even assuming a move from Florida to North Carolina provides the interstate commerce connection, Butler was subject to lower penalties if his move occurred years before April 2012.

As it stands, there is insufficient record evidence showing that Butler committed a transportation of visual depictions of child pornography in April 2012.  Regardless of whether the government relied on Butler's move from Florida

to North Carolina or his carrying of the video from his North Carolina home to the North Carolina commercial media transfer company, the record evidence failed to show an interstate commerce connection. It also failed to show that the act occurred in April 2012.

The district court both plainly erred and abused its discretion here. The district court's failure to properly establish a factual basis "seriously affect[ed] the fairness, integrity, and public reputation of" Butler's guilty plea. *Vineyard*, 266 F.3d at 324-25. The district court abused its discretion by failing to establish a factual basis to accept Butler's guilty plea because its judgment of conviction was based on a "clearly erroneous factual finding." *Mitchell*, 104 F.3d at 652; *Mastrapa*, 509 F.3d at 660; *Martinez*, 277 F.3d at 531; *Johnson*, 617 F.3d at 292. More appropriately, it was based on no factual finding. Butler was prejudiced because even if the government can produce facts showing he committed a child pornography transportation crime, it is unclear that he received the correct sentence given that the factual basis may show he committed that crime years earlier.

Butler's relief for this violation turns on resolution of what this Court has referred to as the "two-remedy rule." *Carr*, 271 F.3d at 180. If the error of the plea hearing involves a problem with the district court's state of mind, the appropriate remedy is to remand to the district court for further proceedings to create the appropriate record (*i.e.*, a new Rule 11 hearing). *Id*. "On the other hand,

18

if 'the error involves the defendant's state of mind, such as when the . . . court failed to determine that the defendant was competent . . . the appropriate remedy is to vacate the plea and remand so that the defendant can plead anew.'" *Id.* (citation omitted).

Here, the Rule 11 hearing transcript suggests that Butler was not fully competent throughout the entire Rule 11 hearing. Butler was hearing impaired and he did not have access to a hearing aid until some point after the Rule 11 hearing started. It is unclear exactly when that point occurred. Perhaps by the time Butler started hearing what was going on, he assumed that a factual basis had already been given. Perhaps Butler did not hear Judge Fox's colloquy when he was addressing multiple defendants collectively regarding their rights to a jury trial and the consequences of pleading guilty (JA pp 13-26). If so, Butler's guilty plea was not fully knowing and informed. Therefore, the error may be associated with what was going on in Butler's mind.

Unfortunately, the evidence concerning Butler's state of mind at the Rule 11 hearing is equivocal. Near the end of the Rule 11 hearing Judge Fox asked Butler if he had heard everything that had gone on that day (JA p 40). Butler replied in the affirmative (JA p 40). It is unclear how Butler would know this given that he was not provided a hearing aid until after the Rule 11 hearing had started. Nonetheless, while there is a perception of impropriety surrounding Butler's Rule

19

11 hearing based on his hearing disability, it is not entirely clear there was error in Butler's mind concerning what took place at that hearing.

Regardless of Butler's state of mind however, the error here is identical to the error found in *Carr*: the lack of a sufficient factual basis to support a defendant's guilty plea. In *Carr*, this Court found such an error to be in the district court's mind. *Id*. at 181. Thus, the *Carr* Court vacated the conviction and remanded for further Rule 11 proceedings. *Id*. Butler therefore respectfully requests the same: that the Court vacate his conviction and remand for a new Rule 11 hearing.

## **CONCLUSION**

Based on the arguments and authorities cited herein, Butler respectfully asks this Court to vacate the district court's judgment and remand this case for a new Rule 11 hearing.


*/s/Richard Croutharmel*
Richard Croutharmel
Attorney for William Christopher Butler 303-200 Blake Street, Suite 211
Raleigh, NC 27601
919-755-1113
Fax: 919-755-1162
rcroutharmel@earthlink.net
N.C. State Bar No. 29165

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. <u>14-4171</u>       **Caption:** <u>United States v. William Christopher Butler</u>

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the  type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[✓]     this brief contains _____4,932_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ]     this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger.  A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[✓]     this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word 2010</u> [*identify word processing program*] in <u>Times New Roman, 14 Point</u> [*identify font size and type style*]; **or**

[ ]     this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) <u>Richard Croutharmal</u>

Attorney for <u>Appellant</u>

Dated: <u>6/9/2014</u>

# CERTIFICATE OF SERVICE

I certify that on <u>June 9, 2014</u> the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Jennifer P. May-Parker
OFFICE OF THE U.S. ATTORNEY
Federal Building
310 New Bern Avenue
Suite 800
Raleigh, NC 27601-1461
919-856-4530
jennifer.may-parker@usdoj.gov

/s/ Richard Croutharmel

Signature

6/9/2014

Date